Katherine Sinclair LEWIS, Administratrix
of the Estate of Joseph W. Lewis, Jr.
(Deceased)

v.

The UNITED STATES.

No. 457–59.

United States Court of Claims.
Nov. 13, 1964.

Keith Misegades, Washington, D. C., for plaintiff.

G. M. Paddack, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, LARA-MORE, DAVIS and COLLINS, Judges, and WHITAKER, Senior Judge.

PER CURIAM.

This case was referred to Donald E. Lane, a trial commissioner of this court who, under the order of reference, submitted his findings of fact and recommended conclusion of law in a report filed on August 16, 1963. Exceptions to the commissioner's report were filed by plaintiff, briefs were filed by the parties and the case was submitted to the court on oral argument of counsel. Since the court is in agreement with the opinion and recommendation of the commissioner, with one addition set forth as footnote 1 it hereby adopts the same, as modified, as the basis for its judgment in this case as hereinafter set forth. Therefore, the court concludes that the "Patent Release and License Contract" is valid and subsisting, and judgment is entered to that effect. Plaintiff's petition is dismissed.

This is a patent suit under the provisions of 28 U.S.C. § 1498 for the recovery of reasonable and entire compensation for unauthorized use of a patented invention. United States Letters Patent No. 2,420,486 issued to the petitioner, Joseph W. Lewis, Jr., in 1947 and disclosed trouser pockets having ventilation apertures formed either by eyelets or by using mesh materials. The case is now before the court on the sole issue as to whether a "Patent Release and License Contract" executed in 1949 by the patentee and accepted by the defendant is valid and subsisting. The petitioner contends that the license contract was canceled in 1958. The defendant contends that the license contract is still in force and hence that there has been no unauthorized use of the invention. The license contract and portions of relevant correspondence are reproduced in the accompanying findings.

The "Patent Release and License Contract" specifically grants to the defendant an *irrevocable*, non-exclusive, non-transferable and *royalty-free license* under Patent No. 2,420,486, and states that the license *shall remain in full force and effect for the full term of the patent* (all emphasis added). The license contract, executed in 1949, recites that it is authorized by Section 3 of the Act of October 31, 1942 (Public No. 768, 77th Congress, 35 U.S.C. §§ 89–96). Said act is generally known as the Royalty Adjustment Act and was extended from time to time to expire July 1, 1953. (56 Stat. 1013, 66 Stat. 54, 96, 137, 296, 330, and 67 Stat. 18.)

The Royalty Adjustment Act provided for adjusting royalties for the use of inventions for the benefit of the United States in aid of the prosecution of the war, and for other purposes. Section 3 of the Act authorizes the head of any department or agency to enter into an agreement with the owner of an invention in full settlement and compromise of any claim against the United States accruing to the owner or licensor under the provisions of the Act or any other law, and for compensation based upon *future* manufacture, use, or sale. The irrevocable royalty-free license agreement executed by the patentee and accepted by the defendant provides in effect that compensation for use of the patent in future manufacture for the defendant would be zero. Such royalty-free license agreements were authorized by Section 3 of the Act.[1] The irrevocable license reciting that the license shall remain in full force and effect until the

---

1. Unlike Sections 1 and 2 of the Royalty Adjustment Act, Section 3 of that Act, under which the license contract was made in 1949, was not scheduled to expire six months after "termination" of the "present war" (World War II); the vitality of Section 3 had no terminal date and that provision was plainly in effect in 1949 at the time of the license contract. See 56 Stat. 1014. In any event the continued existence of the entire Royalty Adjustment Act up to July 1953 was established and confirmed by the Emergency Powers Interim Continuation Act of April 14, 1952, 66 Stat. 54, 57, and its amending statutes, 66 Stat. 137, 296, 330, and 67 Stat. 18. Accordingly, the license agreement in this case was fully authorized by statute at the time it was made. [Footnote by the court.]

expiration of the patent in 1964 did not terminate on July 1, 1953, the expiration date of the Royalty Adjustment Act, even though the license contract recited that it was authorized by Section 3 of said Act.

■ Petitioner's attempt in 1954 to cancel the irrevocable royalty-free license contract invoked the Act of August 16, 1950 (Public No. 694, 81st Congress, 64 Stat. 448). This Act provided for the cancellation of certain licenses granted to the defendant by private holders of patents and rights thereunder, and stated that the head of any department or agency is authorized, upon the application of the grantor of such a license, to enter into such supplemental contract for the cancellation of the license contract as the head of the department or agency shall *deem to be warranted* by equities existing by reason of changes in circumstances. In the present case, the Assistant Secretary of the Army (Logistics) replied to petitioner's request for cancellation or modification by a letter stating that the license contract was not considered to be within the purview of the Act of August 16, 1950, and that even if it was, no equities existing by reason of changes in circumstances had been established to warrant cancellation of the contract. The refusal to cancel the license contract is not believed to have been an abuse of discretion. Petitioner's attempt to cancel the license contract again in 1958 was also ineffective.

■ The license contract recites that *in consideration of the grant by other patent owners of like releases and licenses to the Government*, the contractor grants an irrevocable, non-exclusive, non-transferable and royalty-free license under his patent. There is no allegation that the license contract was obtained by duress. The recited consideration plus the fact that the licensor retained the right to license manufacturers for civilian use of his invention does not warrant a conclusion that the contract was invalid for lack of adequate consideration. It is clear that by executing the irrevocable royalty-free license the petitioner expect-

ed that defendant would promptly adopt, use, and publicize his invention, and thereby encourage the clothing manufacturers to seek a license from the petitioner to use the invention in civilian clothing. The fact that 5 years elapsed between the date of the license contract and the date of defendant's first military specification approving nylon netting for pocket material is not a failure of consideration adequate to support cancellation of the irrevocable license contract. In 1958, petitioner's attempts to interest possible licensees pointed out that the Army and Air Force adoption of ventilating pockets after years of testing contributed to the validity of his patent. The "Patent Release and License Contract" may be considered as a gift. The essentials of a gift are donative intent, delivery, and acceptance. These elements are present. Gifts are as valid as transfers for valuable consideration.

■ Petitioner contends that he has been damaged by defendant's failure to specify in defendant's military specifications that shorts manufactured thereunder with ventilating pockets must carry a patent notice, i. e., a marking or label that the article was made pursuant to a license under Patent No. 2,420,486. The marking statute in effect in 1949 provided that it *shall be the duty* of all patentees and their assigns and legal representatives, and of all persons making or vending any patented article for or under them, to give sufficient notice to the public that the same is patented, either by fixing thereon or to the package the word "patent" together with the number of the patent (Rev.Stat. § 4900, February 7, 1927, 44 Stat. 1058). Said statute provided that in any suit for patent infringement by the party failing so to mark, no damages shall be recovered except for continued infringement after actual notice of infringement. Said marking statute was revised in 1952 to provide that patentees and persons making and selling any patented articles *may give* notice to the public that the same is patented (35 U.S.C. § 287, July 19, 1952, 66 Stat. 813). The first military speci-

fication for shorts with nylon netting pockets was issued by defendant December 19, 1955, and contained no requirements with respect to any patent marking. An acknowledgment of the petitioner's request for such a reference is noted in defendant's letter of August 22, 1949, reproduced in finding 5. The fact that the request was apparently overlooked when defendant issued the first military specification over 6 years later is not sufficient ground to invalidate the irrevocable license contract.

Summarizing, it appears that the 1949 irrevocable license contract did not terminate in 1953 on expiration of the Royalty Adjustment Act, was not canceled by petitioner's requests in 1954 and 1958, was not invalidated for lack of adequate consideration, and was not invalidated by defendant's failure to include a patent notice requirement in the military specifications issued in 1955 and subsequently.

It is recommended that the court conclude as a matter of law that the "Patent Release and License Contract" dated August 12, 1949, is a valid and subsisting license, and that the petition should be dismissed.